UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**JESSICA S. ALLEN**
UNITED STATES MAGISTRATE JUDGE

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102
(973-645-2580)

## LETTER ORDER

September 24, 2024

TO:   ALL COUNSEL OF RECORD

Re:   Labelle v. Future FinTech Group, Inc., et al.
      Civil Action No. 24-247 (JXN) (JSA)

Dear Counsel:

This is a putative class action brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C § 78u-4(a)(3)(B). Before the Court are the following motions:

(1) Gary Pierce's ("Pierce") Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (ECF Nos. 5, 11; "Pierce's Motion to Appoint");
(2) Jeff Dyck's ("Dyck") Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (ECF No. 6; "Dyck's Motion to Appoint");
(3) Scott Present's ("Present") Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (ECF Nos. 7, 12; "Present's Motion to Appoint");
(4) Present's Motion to Seal his Motion to Seal and to Strike Evidence (ECF Nos. 13, 14, 17; "Present's First Motion to Seal and to Strike");
(5) Present's Motion to Seal (i) Pierce's Opposition to Present's Motion to Seal and (ii) Reply Memorandum of Law in Further Support of Present's Motion to Seal to Strike Evidence (ECF Nos. 18, 19, 21; "Present's Second Motion to Seal").

Pierce opposes Present's Motion to Appoint. (ECF No. 9). Present opposes Pierce's Motion to Appoint. (ECF No. 10). Present and Pierce both oppose Dyck's Motion to Appoint. (ECF Nos. 9, 10). Pierce opposes Present's First Motion to Seal and to Strike and Present's Second Motion to Seal. (ECF Nos. 16, 20). Dyck has not filed any opposition to either of Present's Motions to Seal. For the reasons set forth below, and for good cause shown, Pierce's Motion to Appoint is **DENIED**; Dyck's Motion to Appoint is **DENIED**; Present's Motion to Appoint is **GRANTED**; Present's First Motion to Seal and to Strike is **DENIED**; and Present's Second Motion to Seal is **DENIED**.

I.   **RELEVANT BACKGROUND**

This case is brought on behalf of a putative class of all persons or entities who purchased or otherwise acquired publicly traded Future FinTech Group, Inc. ("Future FinTech" or "the

Company") securities from March 10, 2020, through January 11, 2024. (*See* Compl., ¶ 1; ECF No. 1). Future FinTech—a Florida corporation with its principal place of business in New York—trades on the NASDQ under the ticker symbol "FTFT." (*Id.*, ¶¶ 7-8). The Company's business includes supply chain financial services and trading, asset management, cross-border money transfer services, and cryptocurrency mining and market data and information services. (*Id.*, ¶ 7). Defendant Shanchun Huang ("Huang") has been Future FinTech's CEO since March 4, 2020. (*Id.*, ¶ 9). Defendant Jing Chen ("Chen") served as the Company's Chief Financial Officer ("CFO") from 2019 until November 2020, and currently serves on the Board of Directors. (*Id.*, ¶ 10). Defendant Ming Yi ("Yi") has served as the Company's CFO since November 30, 2020. (*Id.*, ¶ 11).

On January 11, 2024, after the market closed, the Securities and Exchange Commission ("SEC") announced that it had charged Huang with "manipulative trading" and "buying hundreds of thousands of Future FinTech shares to artificially increase the company's stock price shortly before and after he became the CEO." (*Id.*, ¶¶ 38-39). Attached to the SEC's announcement was its civil complaint filed against Huang in the United States District Court for the Southern District of New York. (*Id.*, ¶ 39). Following this news, on January 12, 2024, Future FinTech's stock price fell $0.27, or 20.9%, to close at $1.02 per share. (*Id.*, ¶ 46).

On January 16, 2024, Plaintiff Denise Labelle filed the present Complaint, alleging that: "(1) Defendant Huang manipulated the price of Future FinTech stock; (2) Defendant Huang and Future FinTech lied to the Securities and Exchange Commission about the nature of Defendant Huang's ownership of Future FinTech stock; (3) Future FinTech understated its legal risk; (4) Future FinTech did not disclose the unlawful measures Defendant Huang took to prop up the price of its stock; and (5) as a result, Defendants' statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times." (*Id.*, ¶ 37).[1]

The PSLRA requires that the first plaintiff to file a complaint alleging a securities class action publish notice of the complaint in a widely circulated business publication within twenty (20) days of its filing. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice is required to inform class members of their right to move the court, within sixty (60) days, for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II); *see also Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, 2016 WL 3032684, at *3 (D.N.J. May 26, 2016).

Counsel for Plaintiff Labelle published notice of her Complaint and the lead plaintiff deadline via *Business Wire* on January 16, 2024. (*See* ECF No. 7-3, Ex. A; *see also* ECF No. 7-1 at 7). On March 18, 2024, three plaintiffs filed motions to be appointed lead plaintiff and for approval of lead counsel: Present, Pierce, and Dyck. (*See* ECF Nos. 5-7).

---

[1] A review of the Court's official docket confirms that summonses were issued on Plaintiff Labelle's Complaint. (*See* ECF No. 4). However, no executed returns of service have been filed, and Defendants have not yet appeared in the case.

## II.   THE MOTIONS TO APPOINT

### A.   PSLRA Framework

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court must consider any timely motion to be appointed lead plaintiff and must appoint the movant that the Court determines to be "most capable of adequately representing the interests of class members[.]" *Id.*  The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262-63 (3d Cir. 2001) (describing the PSLRA's process for determining the "most adequate plaintiff").  The only Rule 23 considerations that are relevant to the lead plaintiff analysis are the typicality and adequacy requirements.  *See id.; see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000) (the lead plaintiff Rule 23 analysis is focused "only on the typicality . . . and adequacy requirements.").

In considering whether a plaintiff has established typicality, "courts should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of the movant] are based differ[] from that upon which the claims of other class members will be based.'"  *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 567 (D.N.J. 2006) (quoting *In re Cendant*, 264 F.3d at 264-65).  As for the adequacy requirement, "courts should consider whether the plaintiff has the ability and incentive to represent the claims of the class vigorously, [whether movant] has obtained adequate counsel, and [whether] there is a conflict between [the movant's] claims and those asserted on behalf of the class."  *Id.*  At the appointment of lead plaintiff stage, the Rule 23 analysis is limited to determining whether the movant has made a "*prima facie* showing" of typicality and adequacy, *In re Cendant*, 264 F.3d at 264-65, and the inquiry "need not be extensive."  *Id.*

Once the court has determined who is the proper presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cendant*, 264 F.3d at 222.  Once established, the lead plaintiff is entitled to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Ultimately, the selection of a lead plaintiff is committed to the court's discretion.  *See In re Milestone Scientific Securities Litig.*, 187 F.R.D. 165, 175 (D.N.J. 1999).

## B. Presumptive Lead Plaintiff

There are two competing proposed lead plaintiffs—Pierce and Present.[2]

In his Motion to Appoint, Pierce represents that he suffered financial losses in the amount of approximately $10,927.70. (*See* Declaration of Kevin G. Cooper, Esq. ("Cooper Decl."), Ex. C; ECF Nos. 5-2, 5-5). Pierce contends that he is a typical and adequate representative for the class and that he manages his own investments, incentivizing him to aggressively pursue this case. (ECF No. 5-1 at 6). Finally, Pierce advises that he has retained experienced counsel to efficiently prosecute the action, selecting Glancy Prongay & Murray LLP as lead counsel and Carella, Byrne, Cecchi, Brody & Agnello, P.C. as liaison counsel. (*Id.* at 7).

In his Motion to Appoint, Present claims to have suffered financial losses in the amount of $42,803.57. (*See* Declaration of Joseph T. Lukens, Esq. ("Lukens Decl."), Ex C; ECF Nos. 7-2, 7-5). Present, like Pierce, contends his claims are typical of the class and that he, too, would be an adequate representative. Present contends that he has previously worked in the banking and insurance industry, manages his own investments, and has a law degree from Cleveland State University. (*See* Declaration of Scott Present, ¶¶ 3-5; ECF No. 7-6). Further, Present contends that he has hired Faruqi & Farqui, LLP, a firm with experience in securities class action work. (*See* ECF No. 7-1 at 11 & Ex. E).

Present and Pierce oppose each other's respective Motions to Appoint. (*See* ECF Nos. 9-12). As detailed in their respective submissions, Pierce and Present agree that Present has the largest financial interest and that Present's claims are typical of the class. (*See generally* ECF Nos. 11, 12).

However, Pierce contends Present has not established he is an adequate representative. (*See* ECF No. 9). According to Pierce, based on an internet search, "it appears that Present was involved in a legal dispute with the Florida Board of Bar Examiners over his admission to practice law in that State," (*id.* at 2), and that "it appears that Present is not admitted to the Florida Bar." (*Id.*; herein, at times, the "Florida Bar proceedings" or "Florida Bar dispute"). Pierce continues that, if Present was denied admission to the Florida Bar, "the reason for denial may be relevant to the determination" of whether Present is an adequate representative. (*Id.*) Pierce further contends that Present should be required to provide "this information to demonstrate his adequacy" and that if he declines, "he should be disqualified from consideration for appointment as lead plaintiff," (*id.*), because such conduct could undermine his adequacy and disrupt the case. (*Id.*; *see also* ECF No. 20 at 2). Pierce continues that, if the Court determines that further investigation may yield disqualifying information," Piece should be granted the opportunity to conduct discovery into the Florida Bar dispute. (*Id.* at 5; *see also* ECF No. 20). Finally, if Present is disqualified, then Pierce submits he should be the presumptive lead plaintiff. (*Id.*)

On reply, Present counters that he is the presumptive lead plaintiff, as he indisputably has

---

[2] Dyck filed a notice of "non-opposition" to Present and Pierce's respective Motions to Appoint, conceding that he does not have the largest financial interest, and therefore, is not the presumptive lead plaintiff. (*See* ECF No. 8). Accordingly, Dyck's Motion to Appoint, (ECF No. 6), is **denied**.

4

the largest financial stake in the litigation and because he satisfies the adequacy and typicality prongs of Rule 23. (ECF No. 12 at 1-2). According to Present, he only needs to make a *prima facie* showing that he would adequately represent the interests of the class, which he has done by submitting a declaration attesting to his educational background and investing experience and the fact that he has hired competent and experienced counsel to prosecute the case. (*Id.* at 2). As to Pierce's reliance on the Florida Bar proceedings as a basis to rebut the presumption, Present submits that Pierce's argument fails for two reasons. First, Present's dispute with the Florida Bar was more than twelve (12) years ago. (*Id.* at 5). Second, Pierce's argument is based on mere speculation that the twelve year-old confidential bar information is relevant to whether Present is adequate to be lead plaintiff. (*Id.* at 5-6). Present further represents that he has "never been convicted of a crime involving unsavory, unethical, or dishonest conduct," (*id.* at 6), and that even if he had, courts have routinely rejected the notion that such prior conduct would render him an inadequate representative or warrant his disqualification from serving as the presumptive lead plaintiff. (*Id.*) Present continues that adequacy may be questioned only "where issues of credibility were raised by confirmed examples of past dishonesty such as fraud or a criminal conviction for an offense that requires proof of dishonesty." (*Id.* at 7). Finally, Present contends that Pierce has not demonstrated a reasonable basis for discovery into the Florida Bar dispute, but nevertheless, states that he is willing to provide the confidential information concerning the Florida Bar dispute to the Court for *in camera* review. (*See* ECF No. 12 at 7-8 & n.3).

Pierce submits that Present's failure to disclose the Florida Bar proceedings demonstrates his lack of adequacy to represent the class. (*See* ECF No. 9 at 3-4). However, the Court discerns a distinction between satisfying the initial showing of adequacy and *rebutting* the presumption once it has been established. *See In re Cendant*, 264 F.3d at 264. At the initial stage, the court's analysis is performed without consideration of any arguments by other members of the putative class, such as those raised here by Pierce. *See In re Enzymotec Ltd. Sec. Litig.*, 2015 U.S. Dist. LEXIS 25720 at *5 (D.N.J. Mar. 3, 2015) (*prima facie* evaluation is made "without the aid of any other parties"); *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *3 (D. Az. Mar. 11, 2009) (same). Allegations from other members of the putative class are "dealt with in terms of assessing whether the lead plaintiff presumption has been *rebutted rather than in terms of deciding whether it has been triggered*." *In re Cendant*, 264 F.3d at 264 (emphasis added). For that reason, Pierce's arguments about what impact, if any, the Florida Bar proceedings have on Present's ability to adequately represent the class is not a proper consideration in determining whether Present is the presumptive lead plaintiff under the PSLRA. Rather, such information should be considered, if at all, in connection with determining whether the presumption has been rebutted. *Id.*[3]

Considering the foregoing, this Court finds that Present has established a *prima facie* showing that he is the presumptive lead plaintiff. First, the parties agree Present has the largest financial stake and that his claims are typical of the class. Second, he is an adequate representative because he has the ability and incentive to represent the claims of the class and has retained qualified counsel. Finally, Pierce raises no arguments suggesting that there would be any conflict between Present's claims and the claims of the class. *See In re Able Labs.*, 425 F. Supp. 2d at 567.

---

[3] Pierce's own case law supports this conclusion. Specifically, Pierce cites *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005). (*See* ECF No. 9 at 3). *Shi* considered adequacy-related arguments from a competing lead plaintiff in connection with whether the lead plaintiff presumption was rebutted, not as part of the movant's *prima facie* showing. *See id.* at *4.

### C.     **Rebutting the Presumption**

Once a presumptive lead plaintiff has been established, the court next considers whether the presumption has been rebutted by means of "'proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Cendant*, 264 F.3d at 268 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "The Third Circuit has stressed that the PSLRA requires more than mere assertions to rebut the presumptive lead plaintiffs' status. Rather, the PSLRA requires 'actual proof' that the presumptive lead plaintiffs are inadequate representatives of the class or subject to unique defenses." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 402 (D. Del. 2014) (citing *In re Cendant*, 264 F.3d at 269-70).

Pierce's attempt to rebut the presumption rests on a series of assumptions. First, Present was denied admission to the Florida Bar. Second, the reason for the denial *could* have been the result of ethical or unsavory misconduct. And finally, the suspected, unknown conduct disqualifies Present from serving as presumptive lead plaintiff. (*See* ECF No. 9 at 2). Based on these assumptions, Pierce contends that the suspected misconduct or prior bad acts could render Present an inadequate representative. (*See id.*; *see also* ECF No. 20). Pierce continues that these alleged "adequacy issues" are particularly worrisome because Present did not affirmatively disclose them in his motion papers. (ECF No. 9 at 3-5).

This Court's review of the judicial landscape reveals that courts around the country have examined whether the prior conduct, credibility, or integrity of a proposed lead plaintiff is relevant to the Rule 23 adequacy determination and that these courts have reached different conclusions. As former Chief Judge Brown astutely noted, the law on this subject is "conclusively inconclusive." *In re Fleetboston Financial Securities Litig.*, 253 F.R.D. 315, 331 (D.N.J. 2008).

This Court has attempted to synthesize the various court decisions across the country. To that end, it appears that the vast majority of courts have considered whether there is proof that the presumptive lead plaintiff: (1) was the subject of an active criminal investigation, *see, e.g., In re Network Assoc. Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (lead plaintiff not adequate due to active criminal investigation of fraud); (2) had been previously convicted of a crime, and if so, whether the conviction demonstrates dishonesty or was unrelated to the instant case, *see, e.g., Sneed v. Acelrx Pharm.*, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (proposed lead plaintiff deemed inadequate and presumption rebutted when he was indicted and convicted for embezzling over $900,000 from a former employer); *Chupa v. Armstrong Flooring, Inc.*, 2020 WL 1032420 (C.D. Cal. Mar. 3, 2020) (armed bank robbery, accompanied by 97 months in federal prison, insufficient to rebut presumption that lead plaintiff was adequate); *Scuderi v. Mammoth Energy Servs., Inc.*, 2019 WL 4397340, at *4 (W.D. Ok. Sept. 13, 2019) (felony conviction for distribution of controlled substance and misdemeanor charge for tampering with public records insufficient to rebut presumption that lead plaintiff was adequate); *Rambarran v. Dynamic Airways, LLC*, 2015 WL 4523222, at *9 (S.D.N.Y. 2015) (proposed lead plaintiff deemed inadequate when he was former disbarred attorney with felony criminal conviction); *McCall v. Drive Fin. Servs. LP*, 236 F.R.D. 246, 251 (E.D. Pa. 2006) (lead plaintiff found to be adequate despite conviction for armed robbery); *Shi*, 2005 WL 1561438, at *3 (conviction for

embezzlement found sufficient to rebut lead plaintiff presumption), or (3) had been publicly sanctioned for violating laws that implicate the individual's moral character, *see, e.g., Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (finding one presumptive lead plaintiff inadequate because he had been "publicly cited as violating SEC and NASD rules in two instances.").

Providing proof of any such conduct is necessary so the court can consider whether the conduct is sufficient to rebut the presumption. Here, Pierce offers no proof that Present was or is currently the subject of any active criminal investigation, has any criminal convictions, or has been publicly sanctioned for violating laws. *See In re Able Labs,* 425 F. Supp. 2d at 573 (finding no evidence that presumptive co-lead plaintiff was under investigation or lied to the court but had there been the court might have reached a difference conclusion); *OFI Risk Arbitrages*, 63 F. Supp. 3d at 402 (rebutting presumption requires actual proof). Rather, in support of his attempt to rebut the presumption, Pierce speculates that if Present was denied admission to the bar, the reason may be relevant to the Court's determination. This Court disagrees.

Even assuming Present was denied admission to the Florida bar, the reason for the denial itself is not relevant. Instead, this Court finds relevance is determined by the challenger offering proof of an ongoing criminal investigation, criminal conviction, or public sanction. Here, Pierce has not done so. At best, he points to general speculative allegations, which are insufficient to rebut the presumption. *See, e.g.*, *Skeels v. Piedmont Lithium Litig.*, 2022 U.S. Dist. LEXIS 30705, at *19 (E.D.N.Y. Feb. 4, 2022) (unsubstantiated allegations of prior improper and/or illegal conduct insufficient to rebut presumption); *Steamfitters Local 449 Pension & Ret. Security Funds v. Sleep Number Corp.*, 2022 WL 1607306, at *5 (D. Minn. May 20, 2022) ("The 'mere risk' that issues may arise in litigation is insufficient. The PSLRA requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status. [Challenger] must put forward 'actual proof' that [presumptive lead plaintiff] is an inadequate representative of the class. [...] [C]hallenger] has offered speculations and concerns, which does not satisfy [challenger's] burden to offer proof that [presumptive lead plaintiff] is an inadequate representative of the class.") (internal quotes and cites omitted). In any event, Present has affirmatively represented that he has not been convicted of an offense alleging unsavory, unethical, or dishonest conduct. (*See* ECF No. 12 at 7).

Even if Pierce were able to offer proof that Present was denied admission, and the reason was based on unsavory or unethical conduct, courts have routinely found that a proposed class representative is not typically rendered inadequate due to allegations of prior "unrelated unsavory, unethical, or even illegal conduct." 1 *Newberg and Rubenstein on Class Actions* § 3.68 (6th ed.) (collecting cases); *see also Susinno v. Work Out World, Inc.*, 333 F.R.D. 354, 362 (D.N.J. 2019) (noting that, "attacks on credibility are not often given much weight," and lead plaintiff found adequate, despite allegations of involvement in insurance fraud scheme); *Fox v. Riverview Realty Partners,* 2014 WL 1613022, at *7-9 (N.D. Ill. Apr. 22, 2014) (finding that lead plaintiff was adequate, despite allegations of dishonesty); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177-78 (S.D.N.Y. 2008) (lead plaintiff adequate despite allegations of dishonesty); *Weikel v. Tower Semiconductor*, 183 F.R.D. 377, 397 (D.N.J. 1998) (lead plaintiff adequate despite allegations of dishonesty and general lack of credibility); *German v. Federal Home Loan Mortgage Corp.*, 168 F.R.D. 145, 154 (S.D.N.Y. 1996) (same). As other courts have observed, "few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished." *C.E. Design*

*Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) (internal quotation omitted). For that reason, "for an assault on [a] class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *Id.*

Here, whatever conduct may have occurred twelve years ago could not rise to the level of severely undermining Present's ability to serve as lead plaintiff, since Pierce does not point to any criminal investigation, criminal conviction, or public sanction resulting from the Florida Bar dispute. Further, any such suspected conduct could not have had any bearing on the allegations in this case or serve as a unique defense to the claims of the class, as the Florida Bar proceedings are twelve years old, thus having concluded long before the class period in this case. *See, e.g.*, *Pagan v. The New Wilson's Meats, Inc.*, 2011 WL 1876027, at *7 (E.D. Pa. May 17, 2011) (proposed lead plaintiff inadequate when he allegedly stole from the named defendant during course of employment, providing potentially unique defense).

The cases on which Pierce relies are distinguishable. There, the lead plaintiffs were rendered inadequate due primarily to criminal convictions. *See Sneed*, 2021 WL 5964596, at *3 (criminal conviction and lack of candor about conviction); *Shi*, 2005 WL 1561438, at *3 (criminal conviction). Again, here, Pierce offers no proof of any such criminal convictions. And this Court finds that any suspected conduct without more does not demonstrate that Present's ability to represent the class as lead plaintiff should be called into question. *See, e.g.*, *Skeels*, 2022 U.S. Dist. LEXIS 30705 at *19; *OFI Risk Arbitrages*, 63 F. Supp. 3d at 402; *Steamfitters Local*, 2022 WL 1607306, at *5. Considering the foregoing, no *in camera* review—which Present has offered—is necessary. Even assuming Present engaged in general conduct that negatively impacted his admission to the Florida Bar or reflects poorly on his character, this Court has already determined that any such suspected, unrelated unsavory or unethical conduct is insufficient to rebut the presumption.

In sum, this Court finds that Pierce has not come forward with any relevant reason for this Court to question Present's adequacy to represent the class, let alone sufficient to rebut the presumption that Present is the presumptive lead plaintiff.[4] Accordingly, Present's Motion to Appoint is **granted**, and Pierce's Motion to Appoint is **denied**.

### D.    Lead Counsel

The PSLRA requires that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The Third

---

[4] In the event Present is not disqualified, Pierce requests discovery into Present. (*See* ECF No. 11 at 1 n.1). However, discovery of competing movants is only permitted if a movant demonstrates "a reasonable basis" for a finding that the presumptive lead plaintiff is inadequate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv). Here, the Court declines to order discovery. To disqualify Present, Pierce would need to provide "admissible evidence so severely undermining [Present's] credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *C.E.*, 637 F.3d at 728. Given the absence of any proof of criminal charges or convictions—and the fact that Present's dispute with the Florida Bar twelve years ago could not bear on the allegations in this case—the Court finds that Pierce has not established a reasonable basis to find inadequacy that would warrant further discovery.

Circuit has indicated that a court should defer to the lead plaintiff's choice of counsel and intervene only if it is necessary to protect the interests of the class." *Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton, Dickinson & Co.*, 2020 WL 3056281, at *3 (D.N.J. June 9, 2020) (citing *In re Cendant*, 264 F.3d at 273-74). As discussed, Present's chosen counsel, Faruqi & Farqui, LLP, has experience in litigating complex securities class actions on behalf of plaintiffs, and has served as lead counsel in several prominent securities class action. (*See* ECF No. 7-1 at 11 & Ex. E). Therefore, this Court finds no reason to disturb Present's selection of lead counsel.

### III.   THE MOTIONS TO STRIKE AND SEAL

#### A.   Parties' Positions

Present and Pierce's competing Motions to Appoint were filed in unredacted form on the public docket without any contemporaneous motion to seal. The supporting briefs discuss the Florida Bar proceedings. (*See* ECF Nos. 9, 11, 12). Nevertheless, after briefing on the respective Motions to Appoint was complete and *publicly* filed, Present filed a combined motion seeking to (a) strike references to the Florida Bar proceedings from the record (or in the alternative, that such information be disregarded), and (b) seal certain portions of (i) the briefing on the Motions to Appoint, and (ii) the briefing on the Motion to Seal itself. (*See* Present's First Motion to Strike and Seal, ECF No. 14, 14-7). In addition, after Pierce opposed Present's First Motion to Strike and Seal, (ECF No. 16), Present filed a Second Motion to Seal, (ECF No. 18), which seeks to seal portions of Pierce's opposition brief in response to Present's First Motion to Strike and Seal, and his own reply brief in further support of the same motion. (ECF No. 18-3). Pierce opposed the Second Motion to Seal as well. (ECF No. 20). Taken together, Present's First Motion to Strike and Seal and Present's Second Motion to Seal present the questions of whether the Florida Bar proceedings should be considered in connection with the Motions to Appoint and whether any aspect of the record should be sealed.

In his First Motion to Seal and Strike, Present argues that the information regarding the Florida Bar proceedings is confidential, should not have been made publicly available, and should be stricken from the record. (*See generally* ECF No. 14-1 at 1-2). In support of this argument, Present attaches a certification from the Clerk of the Florida Supreme Court, confirming that Present's proceedings with the Florida Bar were intended to be confidential and should not have been available online. (*See* ECF No. 14-4). Accordingly, Present argues that any reference to the Florida Bar proceedings should be stricken from the record and not considered as part of the lead plaintiff adequacy analysis. (ECF No. 14 at 1-2). Thereafter, Present filed his Second Motion to Seal, seeking to seal the opposition and reply papers submitted in connection with the First Motion to Seal and Strike, contending that the confidential nature of the Florida Bar proceedings warrants sealing.

In opposition, Pierce contends that the Florida Bar proceedings are relevant to the question of whether Present is an adequate representative. (ECF No. 16 at 9-10). Further, Pierce contends that Present's First and Second Motions to Seal must be denied for a panoply of reasons, including that (1) references to the Florida Bar proceedings remain publicly available on the internet; (2) the briefing on the Motions to Appoint is unredacted and has been on the public docket for months; (3) Present has not explained or articulated any harm that would result from public disclosure; and

9

(4) the Motions to Seal do not comply with Local Civil Rule 5.3. (*See* ECF Nos. 16 at 3-6; *see also* ECF No. 20). As detailed below, this Court agrees.

### B. Analysis

As it relates to Present's First Motion to Strike, this Court has already found that any suspected conduct related to the Florida Bar proceedings is insufficient to rebut the lead plaintiff presumption. However, in reaching that conclusion, this Court considered, but rejected, Pierce's contention that the suspected conduct rebuts the presumption. As at least one court in this District has held, allegations challenging the adequacy of a lead plaintiff may be considered even if such information is inadmissible under the Federal Rules of Evidence. *See Rojas v. City of New Brunswick*, 2008 WL 11513208, at *4-6 (D.N.J. Jan. 3, 2008) (denying motion to strike information challenging lead plaintiff's adequacy regardless of its admissibility). Further, Present cites no relevant authority to support his request to strike. For that reason, Present's request to strike is **denied**.

The Court next turns to consider Present's request to seal. The common law right of public access to judicial proceedings and records is well-settled. *See In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). With respect to the presumptive right of access to judicial records, "when a moving party seeks an order sealing court records, it must demonstrate that 'good cause' exists to overcome the presumption in favor of public access." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 2016 U.S. Dist. LEXIS 47798, at *4 (D.N.J. Aug. 29, 2017); *see Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). The "good cause" standard requires a "particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" *City of Sterling Heights Gen. Employees' Ret. Sys.*, 2016 U.S. Dist. LEXIS 47798, at *4 (quoting *Pansy*, 23 F.3d at 786). "This standard was incorporated into this District's Local Civil Rule 5.3, which sets forth the requirements for a motion to seal." *Id.*

Local Civil Rule 5.3(c) requires the reviewing Court to consider the following factors:

(a) the nature of the materials or proceedings at issue;
(b) the legitimate private or public interest which warrant the relief sought;
(c) the clearly defined and serious injury that would result if the relief sought is not granted; [and]
(d) why a less restrictive alternative to the relief sought is not available.

L. Civ. R. 5.3(c)(3).

The Court denies Present's request to seal the briefing on the motions in this case for two reasons.

First, the Court cannot undo the public disclosure that has already occurred. The Motions to Appoint, including Present's *own brief*, publicly disclose the existence of, and discuss, the Florida Bar proceedings. (*See* ECF Nos. 9, 11, 12). It may be true that the Florida Bar proceedings were intended to be confidential and are only publicly known because of the Florida Supreme Court's error. However, regardless of inadvertence or mistake, the fact is once the existence of

the Florida Bar proceedings was made public, it is public, and retroactive sealing is not permitted. *See Pfizer v. Teva*, 2010 WL 2710566, at *4 (D.N.J. July 7, 2010). As the Second Circuit Court of Appeals has explained:

> For the same reasons, we think that it was a serious abuse of discretion for the district court to refer to the magnitude of the settlement amount—theretofore confidential—in the Unsealing Order. But however confidential it may have been beforehand, subsequent to publication it was confidential no longer. . . . [W]e simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again. *Cf. SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F.Supp.2d 1002, 1008 (N.D.Ill.2003) (Posner, J., sitting by designation) (deciding that a motion to seal portions of an agreement containing confidential information would not be granted as to redacted aspects of the agreement already disclosed in the court's opinion). The genie is out of the bottle, albeit because of what we consider to be the district court's error. We have not the means to put the genie back.
>
> \*     \*     \*
>
> This is generally so when information that is supposed to be confidential—whether it be settlement terms of a discrimination lawsuit or the secret to making the hydrogen bomb, *see United States v. Progressive, Inc.*, 467 F. Supp. 990, *reh'g denied*, 486 F.Supp. 5 (W.D.Wis.), *appeal dismissed*, 610 F.2d 819 (7th Cir.1979)—is publicly disclosed. Once it is public, it necessarily remains public. . . . []
> Once the cat is out of the bag, the ball game is over.

*Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 & n.11 (2d Cir. 2004).

In *Constand v. Cosby*, the Third Circuit embraced the Second Circuit's analysis in *Gambale*. *See* 833 F.3d 405, 410 (3d Cir. 2016) ("Public disclosure cannot be undone because, as the Second Circuit has explained in similar circumstances, "[w]e simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again." (citing *Gambale*, 377 F.3d at 144)). Here, the briefs are public, the existence of the Florida Bar proceedings is "out of the bottle," and this Court "does not have the means" to put them back in. *See Gambale*, 377 F.3d at 144. Further, whether, as Present submits, the Florida Bar of Examiners acknowledged it mistakenly filed the existence of the Florida Bar proceedings on the internet, it is undisputed that the information was publicly filed and remained so for years, even after this lawsuit was filed. (*See* ECF No. 16 at 3, 5-7; ECF No. 20 at 1).

Second, even if the information sought to be sealed was not already publicly disclosed, Present has not articulated a clearly defined and serious injury that would result from public disclosure. To be clear, the underlying details of the Florida Bar proceeding, which occurred twelve years ago, remain confidential and have not been disclosed. Present does not articulate or establish, at all, how the public disclosure of the mere existence of the Florida Bar proceeding (or

11

any aspect of the current briefing) would cause him any harm, let alone a serious injury.[5]

## IV.    CONCLUSION

For the reasons set forth above, and for good cause shown, Pierce's Motion to Appoint is **DENIED**; Dyck's Motion to Appoint is **DENIED**; Present's Motion to Appoint is **GRANTED**; Present's First Motion to Seal and to Strike is **DENIED**; and Present's Second Motion to Seal is **DENIED**.  Accordingly, Present is appointed as lead plaintiff, and Faruqi & Farqui, LLP is appointed as lead counsel.

Pursuant to Local Civil Rule 72.1(c)(1)(C), the Clerk shall not unseal any documents currently under seal pending further order of the Court.

The Clerk is directed to terminate ECF Nos. 5, 6, 7, 13, and 18.

**SO ORDERED**.

s/Jessica S. Allen<br>
**Hon. Jessica S. Allen**<br>
**United States Magistrate Judge**

cc:  Hon. Julien X. Neals, U.S.D.J.

---

[5] In addition, the Court notes that Present's Motions to Seal do not comply with the Local Civil Rules, as any motion to seal itself cannot be filed under seal.  *See* L. Civ. R. 5.3(c)(1) ("Any motion and supporting papers to seal or otherwise restrict public access shall be available for review by the public.").  However, given this Court's ruling on the motions to seal on the merits, there is no need to address any apparent procedural defects.