**DICKINSON WRIGHT PLLC**
Lindsey M. Specht
1825 I St., N.W., Suite 900
Washington, DC 20006
Tel.: (202) 659-6965
lspecht@dickinson-wright.com

[additional counsel listed in signature block]

*Attorneys for Defendants Shanchun Huang,*
*Ming Yi, and Future FinTech Group Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DENISE LABELLE, Individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FUTURE FINTECH GROUP INC., SHANCHUN HUANG, JING CHEN, and MING YI,**<br><br>**Defendants.** | Hon. Julien Xavier Neals, U.S. D. J.<br><br>Hon. Jessica S. Allen, U.S. Maj. J.<br><br>Case No. 2:24-cv-00247-JXN-JSA<br><br><u>CLASS ACTION</u> |

## <u>REPLY IN SUPPORT OF</u>
## <u>DEFENDANTS SHANCHUN HUANG, MING YI, AND FUTURE FINTECH GROUP INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(5) AND 12(b)(6)</u>

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

INTRODUCTION ......................................................................................................... 1

I.  The Hague Convention, which Plaintiff was required to follow, was not satisfied here. ...................................................................................................... 2

II.  Plaintiff's allegations are made "on information and belief," but fail to support that belief with the required particularity under the PSLRA. ........... 5

III.  Even if Plaintiff sufficiently alleges that Huang made the subject trades (Plaintiff does not), the alleged trading activity does not amount to market manipulation under the applicable statute. ..................................................... 7

IV.  Plaintiff has not shown that FTFT's alleged omissions are material as a matter of law. ................................................................................................... 9

V.  Plaintiff fails to allege scienter. ................................................................... 11

VI.  Plaintiff fails to allege loss causation. ......................................................... 14

VII.  Plaintiff's Section 20(a) claim fails. ............................................................ 15

VIII.  CONCLUSION............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ................................................................................ 6, 7

*Braverman Kaskey, P.C. v. Toidze*,
  599 Fed. Appx. 448 (3d Cir. 2015) ...................................................................... 2

*Celgene Corp. v. Blanche Ltd.*,
  2017 WL 1282200 (D.N.J. Mar. 10, 2017) ........................................................... 3

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014) ............................................................................... 10

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ......................................................................... 10, 11

*EOI Corp. v. Med. Mktg. Ltd.*,
  172 F.R.D. 133 (D.N.J. 1997) .............................................................................. 2

*In re Aetna, Inc. Sec. Litig.*,
  617 F.3d ............................................................................................................ 11

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
  2011 WL 3444199 (D.N.J. Aug. 8, 2011) ...................................................... 12, 13

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  218 F.R.D. 76 (S.D.N.Y. 2003) .................................................................... 14, 15

*In re Olympia Brewing Co. Sec. Litig.*,
  613 F. Supp. 1286 (N.D. Ill 1985) ....................................................................... 8

*In re Party City Sec. Litig.*,
  147 F. Supp. 2d 282 (D.N.J. 2001) ..................................................................... 15

*In re Radian Sec. Litig.*,
  612 F. Supp. 2d 594 (E.D.Pa. 2009) ................................................................... 12

ii

*Institutional Investors Group v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009).................................................................. 5, 7, 11, 12

*Kennilworth Partners L.P. v. Cendant Corp.*,
  59 F. Supp. 2d 417 (D.N.J. 1999) ....................................................................... 13

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015).................................................................. 13

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
  601 U.S. 257 (2024) ............................................................................................... 9

*Meyer v. Greene,*
  710 F.3d 1189 (11th Cir. 2013)........................................................................... 14

*Oran v. Stafford,*
  226 F.3d 275 (3d Cir. 2000)................................................................................ 11

*Payne v. DeLuca*,
  433 F. Supp. 2d 547 (W.D. Pa. 2006)................................................................. 15

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2016)........................................................................... 12, 13

*S.E.C. v. Gallagher*,
  2023 WL 627668 (S.D.N.Y. Sept. 26, 2023)........................................................ 7

*Sapssov v. Health Mgmt. Assoc., Inc.,*
  608 F. App'x 855 (11th Cir. 2015) ...................................................................... 14

*Snyder v. Swanson,*
  371 Fed. Appx. 285 (3d Cir. 2010) .................................................................... 3, 4

*Trane Co. v. O'Connor Securities*,
  561 F.Supp. 301 (S.D.N.Y. 1983)......................................................................... 8

*United States v. Crop Growers Corp.*,
  954 F. Supp. 335 (D.D.C. 1997) .................................................................... 10, 11

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988) ................................................................................ 4, 5

## Rules

Fed. R. Civ. P. 9(b) ...................................................................................... 7
Fed. R. Civ. P. 12 ................................................................................. 1, 4, 5

## Other Authorities

Civil Procedure Rules of England and Wales, 6.5(3)(a) .................................... 2 , 4

Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil
    and Commercial Matters,
    Nov. 15, 1965 (Hague Service Convention), 20 U.S.T. 361, T.I.A.S. No. 6638 ...
    ................................................................................................... 2, 3, 4, 5

People's Republic of China Civil Procedure Law ...................................................... 5

The World Organization for Cross-border Co-operation in Civil and Commercial
    Matters, China – Central Authority & Practical Information ............................... 5

iv

## **INTRODUCTION**

The Court should grant the Motion to Dismiss as Lead Plaintiff Scott Present ("Plaintiff") fails to demonstrate that he properly served the individual defendants or that he can state a claim upon which relief can be granted.

*First*, Huang and Yi were not properly served. Plaintiff's failure to comply with the requirements of England's Civil Procedure Rules and Article 2-9 of the Hague Convention as those rules apply to service of process in China (i.e., service by central authority or consular agents) renders service ineffective and incomplete.

*Second*, Plaintiff's regurgitation of the Securities and Exchange Commission's civil complaint misrepresents testimony provided by Huang as part of the SEC's formal inquiry. Specifically, in the opposition brief, Plaintiff acknowledges that he is relying, at least in part, on testimony provided by Shanchun Huang ("Huang") to the SEC, which was attached to his Complaint and properly considered on a Motion to Dismiss. The problem for Plaintiff is that Huang's testimony contradicts the erroneous allegations in the Complaint. Indeed, Huang clearly testified that he has never purchased Future Fintech Group. Inc. ("FTFT") stock in his personal brokerage account, he never traded in FTFT stock, he has never accessed the account at issue subsequent to it being opened, and that his younger brother is the person who had sole control over the account at issue in this case. (ECF 49-2 at 14, 15, 16, Huang Dep. Tr. 47:15-19, 49:6-9, 50:23-51:1,

1

54:18-23, 56:11-13.) The law in this circuit is clear that where a plaintiff attaches documents to their own Complaint, the exhibits control over conflicting allegations. Here, Plaintiff's reliance on Huang's testimony entirely defeats the contradictory allegations in the Amended Class Action Complaint ("Amended Complaint"). Because the testimony supporting Plaintiff's allegations contradicts his allegations and refutes the elements required under the PSLRA, the Amended Complaint must be dismissed as a matter of law.

I.    **The Hague Convention, which Plaintiff was required to follow, was not satisfied here.**

It is undisputed that Plaintiff failed to comply with the requirements of England's Civil Procedure Rules—and so the Hague Convention. This is a clear failure to "satisfy both the statute under which service is effectuated and constitutional due process." *EOI Corp. v. Med. Mktg. Ltd.*, 172 F.R.D. 133, 142 (D.N.J. 1997). Plaintiff admits that he only attempted to personally serve Huang two times: once on November 22, 2024, and once on December 11, 2024. (ECF 31-1 at 12.) Plaintiff did not allege that Huang actively avoided service of process, and Plaintiff makes no sufficient showing that Huang's address is "unknown" or that "the Hague Convention shall not apply." *See Braverman Kaskey, P.C. v. Toidze*, 599 Fed. Appx. 448, 451 (3d Cir. 2015) (affirming grant of substituted service only after Plaintiff made four attempts at personal service and two attempts at service by registered mail). Indeed, there is no indication Plaintiff utilized skip

2

tracing or made any effort to search public records to obtain Huang's current address, steps that are routinely employed to locate defendants in lawsuits.

Plaintiff claims that the Hague Convention does not apply because "an address may be considered unknown for the purpose of the Hague Convention" if "[p]laintiff identified an address [and] its investigators determined that [the individual] maintains no actual presence at the address." *Celgene Corp. v. Blanche Ltd.*, 2017 WL 1282200, at *3 (D.N.J. Mar. 10, 2017). This would require plaintiff to *first* identify an address and *then* to confirm that Huang and Yi were not present at that address. But the court's prior order regarding substituted service admitted that Plaintiff was "unable to confirm current addresses for Huang and Yi" at all—a prerequisite to determining where Huang and Yi maintain an actual presence.

Moreover, when Plaintiff's counsel contacted Dickinson Wright about service, (ECF 31-8 at 3), Dickinson Wright responded that no "Dickinson Wright attorneys are in a position to communicate with respect to any matter other than the matter in which [Dickinson Wright has] entered an appearance." (*Id.* at 2.) It does not follow that substituted service on Huang "through the Dickinson law firm is reasonably calculated to provide Huang with notice of this action, and thus, comports with due process." *Compare* (ECF 37 at 7) *with Snyder v. Swanson*, 371 Fed. Appx. 285, 287 (3d Cir. 2010) (service of process on attorney was not effective where attorney clearly informed plaintiff that he did not agree to accept

3

service on defendant's behalf). Consistent with the language of *Snyder*, Huang's counsel in the SEC civil litigation expressly and unambiguously informed Plaintiff that the <u>only</u> matter in which Dickinson Wright was counsel at that time was the litigation in another district in a different circuit.

Because the Hague Convention states that "[t]he present Convention *shall* apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," Plaintiff's failure to comply with the requirements of England's Civil Procedure Rules warrants dismissal as to Huang. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (citing Hague Convention at 362) (emphasis added). The Supreme Court has recognized the Hague Convention's mandatory nature through the Supremacy Clause. *See id*.

This is especially true with respect to Yi because Plaintiff does not even pretend to have identified an address for Yi in China or any contact with the appropriate central authority under Article 2-9 of the Hague Convention (i.e., service by central authority of by consular agents) nor has Plaintiff identified any steps to search for a valid address. Thus, Plaintiff's failure to take any steps to properly serve Yi or even identify an address is plainly contrary to the People's Republic of China Civil Procedure Law and requires dismissal under Fed. R. Civ. P. 12(b)(5). *See Volkswagenwerk*, 486 U.S. at 699 (citing Hague Convention at

4

362). Chinese procedural law provides that, subject to exceptions not applicable here, "no foreign agency or individual may serve documents or collect evidence within the territory of the People's Republic of China without the consent of the in-charge authorities." Article 284 of the People's Republic of China Civil Procedure Law. Furthermore, when acceding to the Hague Service Convention, the People's Republic of China explicitly objected to service by postal channels under Article 10 of the Convention. *See* Hague Conference on Private International Law, China — Central Authority & Practical Information. As a result, service of process from abroad must be transmitted through China's Central Authority (the Ministry of Justice) via the procedures outlined in Articles 2-9 of the Convention. Plaintiff has made no showing that any of these steps were even attempted. Nor does Plaintiff show that the documents used included translations as required under Chinese law, and thus the Hague Convention. *See id*. Therefore, the Court should dismiss Huang and Yi under Fed. R. Civ. P. 12(b)(5).

## II.    Plaintiff's allegations are made "on information and belief," but fail to support that belief with the required particularity under the PSLRA.

Plaintiff does not dispute that his claims are subject to the heightened pleading standard set forth under the PSLRA. *See Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). Rather, Plaintiff cites non-binding authority to argue that his use of the allegations from the SEC Complaint are proper. Resp. at 17. This argument, however, does not change the fact that the

5

Plaintiff does not—because he cannot—sufficiently plead that Huang was the person who engaged in the alleged trading activity. Plaintiff concedes that his allegations are made with "conditional" terms not present in the SEC Complaint. Resp. at 18.

Still, Plaintiff attempts to bolster his allegations by citing to deposition testimony that Huang voluntarily gave the SEC. Resp. at 2, 4, 17. But Huang's sworn testimony, attached to the Amended Complaint as Exhibit B, shows that Huang never "traded in the securities of FTFT in [his] personal brokerage account" (ECF 49-2 at 14), that Huang "never personally traded in Future FinTech stock" (*Id*. at 15), that Huang "never accessed the account except shortly after [he] opened [the account]" (*Id*. at 16), and that Huang's "younger brother [had] control over [his] bank account at HSBC." (*Id*. at 15.)

Because this evidence, which is attached to the Complaint and incorporated by reference, contradicts Plaintiff's own allegations, Plaintiff fails to state a claim for relief. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (stating that when the exhibits attached to a complaint contradict the allegations in the complaint, the exhibits control, on a motion to dismiss for failure to state a claim); *see also Ojelade v. PHH Mortage Servicing Corp.*, CV 25-1111 (RK) (JBD), 2025 WL 3514582, at *3 (D.N.J. Dec. 8, 2025) (when "an exhibit contradicts the allegations in the complaint, 'the exhibits control.'").

6

Thus, Plaintiff's sole reliance on the SEC Complaint shows only (i) that "more than one person was trading in Huang's securities account" during the timeframe Plaintiff alleges is relevant to his claims (ECF 49-1 ¶ 96) and (ii) that beyond the notion that "the vast majority of [FTFT] trades were made from Huang's location," the identity of the trader is not known. (*Id*. ¶ 100.) These admissions render Plaintiff's allegations insufficient to satisfy Fed. R. Civ. P. 9(b) pleading standards because there is no specific allegation regarding who conducted the alleged manipulative trading and Huang's testimony refutes Plaintiff's erroneous allegations. *Compare id*. *with Avaya*, 564 F.3d at 253.

**III.    Even if Plaintiff sufficiently alleges that Huang made the subject trades (Plaintiff does not), the alleged trading activity does not amount to market manipulation under the applicable statute.**

Plaintiff's alleged omissions are immaterial as a matter of law because Huang's alleged trading activity was not market manipulation with the intent to artificially increase FTFT's stock price. (ECF 65 at 23-24.) Plaintiff cites authority in his Response to argue that open market transactions that are not inherently manipulative may constitute manipulative activity when accompanied by manipulative intent. Resp. at 21 (citing *S.E.C. v. Gallagher*, 2023 WL 627668 (S.D.N.Y. Sept. 26, 2023). But Plaintiff fails to allege that the trading activity "[sent] a false pricing signal to the market," and Plaintiff's Response fails to show

7

otherwise. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007).

Simply purchasing or selling securities in the open market does not satisfy those requirements. *Id*. at 101 ("To be actionable as a manipulative act, short selling[, for example,] must be willfully combined with something more to create a false impression of how market participants value a security.").

Here, the alleged trades merely "reflect supply and demand based on accurate market information," which means that as matter of law the alleged trading activity is "lawful market behavior, not market manipulation." *In re Olympia Brewing Co. Sec. Litig.*, 613 F. Supp. 1286, 1296 (N.D. Ill 1985); *see Trane Co. v. O'Connor Securities*, 561 F.Supp. 301, 304 (S.D.N.Y. 1983) ("The central purpose of section 9(a) is not to prohibit market transactions which may raise or lower the price of securities . . ."). Plaintiff's claim that Huang violated Section 10(b) of the Exchange Act hangs entirely on the allegation that Huang's alleged trading activity was in fact "manipulative." (*See* ECF 49 ¶¶ 123, 128, 132, 135, 139.) It was not.

While Plaintiff alleges that Huang's alleged trades were made "with the intent to artificially increase the price of [FTFT] stock" (*See*, *e.g.*, *id*. ¶ 123), there are no allegations in the Amended Complaint that the price fluctuation was the result of anything more than legitimate transactions. At best, Plaintiff accuses

8

Huang of engaging in less-than-savvy trading, because he allegedly engaged in "trades that generally would not make economic sense for an investor who sought to buy the stock at the lowest available price." (*Id*. ¶ 53.)

Because Plaintiff has failed altogether to plead that Huang actually engaged in the subject transactions and such an allegation would be contrary to Huang's testimony attached to the Complaint, and Plaintiff has similarly failed to plead that the transactions injected false information into the marketplace, the Court should dismiss as a matter of law Plaintiff's First and Second Claims for Relief alleging market manipulation.

**IV.    Plaintiff has not shown that FTFT's alleged omissions are material as a matter of law.**

Plaintiff seemingly fails to address Defendants' argument that failing to disclose trading activity or beneficial ownership under Rule 16a is not a material omission under Rule 10b-5 as a matter of law because Rule 10b-5 does not impose a duty to disclose trading activity or beneficial ownership under Rule 16a. *See Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 265 (2024) (holding that failure to disclose information required by separate SEC regulations can support a Rule 10b–5(b) claim ***only if*** the omission renders affirmative statements made misleading.") (emphasis added). Rather, Plaintiff repeats his allegations writ large in his Response that Huang and FTFT's statements were materially false and misleading because they omitted "the manipulative trading

that Defendant Huang undertook in order to artificially inflate the price of the Company's stock to above $1.00 per share to prevent [FTFT]'s delisting from Nasdaq, for his personal gain, and to induce investors to purchase [FTFT] stock." (ECF 49 ¶¶ 128, 132, 135.)

Here, Huang's and FTFT's silence do not constitute an actionable "omission." Huang testified that he never personally traded FTFT stock, let alone had any knowledge of such trades. (ECF 49-2 at 14, 15.) Not only did Huang not make the alleged trades, there was no duty to disclose such alleged trading under Rule 10b-5. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 174 (3d Cir. 2014). The SEC statutory framework provides for what are required disclosures; duties to disclose are not some hypothetical Plaintiff's wish. *See United States v. Crop Growers Corp.*, 954 F. Supp. 335, 346 (D.D.C. 1997) (dismissing indictment because no duty to disclose existed under SEC rules).

Furthermore, there is no generalized duty to disclose the kind of activity alleged here—uncharged and unadjudicated wrongdoing that is contrary to the very transcript attached to the Complaint. *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) ("[D]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing.") (internal quotation marks omitted) (footnote

10

omitted); *See Crop Growers*, 954 F. Supp. at 346 (dismissing indictment because "Defendants had no duty to disclose the conduct alleged.").

Therefore, the alleged reporting error under Section 78p—upon which all of Plaintiff's allegations ultimately rely—is not "a material misrepresentation or omission" by Huang or FTFT as a matter of law. *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d at 277; *see also Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000) (affirming dismissal of securities fraud class action and finding that a violation of an SEC regulation's reporting requirement was not a material omission and "cannot provide a basis for liability" under Rule 10b–5.).

## V.     Plaintiff fails to allege scienter.

Plaintiff argues that his scienter allegations are sufficient because they show (i) knowledge of and access to information about Huang's alleged trading, (ii) Defendants' opportunity to commit securities fraud, and (iii) vague circumstantial evidence. Resp. at 30-36. Not so.

Plaintiff fails to allege that Huang made any omission with the requisite scienter because simply alleging (i) motive and (ii) opportunity to commit fraud—as Plaintiff has here—"no longer serve as an independent route to [pleading] scienter[.]" *Inst'l Investors Group v. Avaya, Inc.* 564 F.3d 242, 277, 278 (3d Cir. 2009) (citation omitted).

11

Plaintiff's boilerplate allegations regarding Huang's interest in maximizing corporate profits do not allege scienter. S*ee In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 608 (E.D.Pa. 2009). This holds true for the loans Huang is alleged to have made to FTFT. *Compare Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245-46 (3d Cir. 2016) ("[P]laintiffs must assert a concrete and personal benefit to the individual defendants resulting from th[e] fraud.") (cleaned up) (quoting *Avaya* 564 F.3d at 278) *with* (ECF 49-1 at 11) (testifying loans made to FTFT were to "pay the employees.").

Similarly, allegations that an executive signed Forms 10-K for the company does not plead scienter, and so scienter cannot arise out of Huang or Yi's alleged knowledge of any SEC filings they signed. *See In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *28 (D.N.J. Aug. 8, 2011) (rejecting arguments that scienter of corporate officer or director may be based on access to information and/or signing SEC Form 10-K). Thus, the Amended Complaint's allegations of generalized motives are insufficient to establish the requisite strong inference of scienter. *See Kid Brands*, 736 F.3d at 245-46.

Plaintiff's scienter allegations with respect to Mr. Yi are particularly tenuous, and do not satisfy the PSLRA. Plaintiff alleges that certain loans made by Huang to FTFT "should have raised red flags" for Yi. (ECF 49 ¶ 12.) Plaintiff alleges that Yi, as CFO of FTFT, "would necessarily have been appraised of the

12

SEC investigation into" Mr. Huang's alleged trading activity, "was obligated to investigate the bases for the SEC's investigation," and would have discovered that Huang placed manipulative trades had an investigation been conducted. *Id.* ¶¶ 162, 176. Finally, Plaintiff alleges that Yi was "motivated to keep [FTFT]'s stock price artificially inflated," based on his compensation structure. *Id.* ¶ 164.

As stated above, allegations that Mr. Yi acted with scienter cannot be based on his signing of Forms 10-K and SOX certifications for the company. *See In re Merck & Co.*, 2011 WL 3444199, at *28 (scienter of corporate officer may not be based on signing SEC Form 10-K); *see also Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 428 (D.N.J. 1999). Similarly, Plaintiff may not plead scienter based on allegations of government investigations, as Plaintiff attempts to do with Mr. Yi. *See, e.g., Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015). Plaintiff admits that FTFT disclosed these investigations as they commenced. (ECF 49 ¶¶ 136-37.) Thus, the Amended Complaint's allegations of generalized motives are insufficient to establish the requisite strong inference of scienter under the PSLRA. *See Kid Brands, Inc.*, 736 F.3d at 245-46. Therefore, Plaintiff's scienter allegations with respect to Mr. Yi fail to cannot form the basis of a Section 10(b) claim against Yi.

13

## VI.    Plaintiff fails to allege loss causation.

Loss causation is not sufficiently pled based on an announcement that the SEC "charged [Huang] with manipulative trading in the stock of [FTFT]." (ECF 49 ¶ 142.) Even accepting Plaintiff's argument as true—that Plaintiff's losses derive from the announcement of charges brought against Huang through the SEC Complaint—these allegations are not enough. *See Meyer v. Greene,* 710 F.3d 1189, 1192-93 (11th Cir. 2013) ("the commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure"); *Sapssov v. Health Mgmt. Assoc., Inc.*, 608 F. App'x 855, 863 (11th Cir. 2015) ("Revelation of the. . . investigation, including issuance of subpoenas, does not show any actual wrongdoing and cannot qualify as a corrective disclosure").

Contrary to Plaintiff's assertion, the January 11, 2024 SEC Announcement, did not "correct" any alleged (i) "omissions concerning Huang's manipulative trading," (ECF 49 ¶¶ 121-35) (ii) "omissions concerning regulations and internal controls" (Id. ¶¶ 136-39), or (iii) "omissions concerning Huang's ownership and purchase of [FTFT] stock[.]" (Id. ¶¶ 140-41.) The allegations in the SEC Complaint are just that—allegations. Unproven allegations from a defective and deficient investigation, which cannot constitute "corrective disclosures" sufficient to allege of loss causation under Section 10(b). *See Sapssov*, 608 F. App'x at 863.

14

Finally, Plaintiff's mere adoption of the allegations contained in an unadjudicated SEC civil lawsuit fail to satisfy the pleading requirements of the PSLRA with respect to loss causation. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003) (striking all allegations in a complaint that "refer to or rely on" earlier unadjudicated regulatory complaints).

## VII.   Plaintiff's Section 20(a) claim fails.

For the reasons stated above, Plaintiff's underlying claims are insufficiently pled, and any corresponding Section 20(a) claims likewise must be dismissed. *See, e.g., Payne v. DeLuca*, 433 F. Supp. 2d 547, 611 (W.D. Pa. 2006) (dismissing Section 20(a) claims for failure to plead adequate Section 10(b)/Rule 10b-5 claims); *see In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 317 (D.N.J. 2001) (same).

## VIII.  CONCLUSION

For the foregoing reasons, Defendants Shanchun (Shawn) Huang, Ming Yi, and Future FinTech, Inc. respectfully request that the Court dismiss the claims for relief against them in Plaintiff Scott Present's Amended Class Action Complaint. (ECF 49.)

April 22, 2026                                    Respectfully submitted,

                                                 **DICKINSON WRIGHT PLLC**

                                                 By: */s/ Lindsey M. Specht*

                                                 Lindsey M. Specht
                                                 NJ Attorney ID: 087912013
                                                 1825 I St., N.W., Suite 900
                                                 Washington, DC 20006
                                                 Tel.: (202) 659-6965
                                                 lspecht@dickinson-wright.com

                                                 Justin J. Bustos (*pro hac vice*)
                                                 Nevada Bar No.: 10320
                                                 100 W. Liberty Street, Suite 940
                                                 Reno, NV 89501
                                                 Tel.: (775) 343-7503
                                                 jbustos@dickinson-wright.com

                                                 ***Attorneys for Defendants Shanchun Huang, Ming Yi, and Future FinTech Group Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April 2026, the foregoing document was served electronically through the Court's CM/ECF system upon all counsel of record in this case who are registered CM/ECF users.

                                                 */s/ Lindsey M. Specht*
                                                 Lindsey M. Specht

16